*[handwritten: initials 9/22/17]*



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

September 22, 2017

*[filing stamp: 2017 OCT -3 PM 3:05]*

Andrew Szekely, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

    Re:    <u>United States v. Eric Nathaniel Sammons</u>, Criminal No.: RDB-17-087

Dear Mr. Szekely:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, September 22, 2017, at 5:00 p.m., it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Counts One and Three of the Indictment now pending against him, both of which charge him with Production of Child Pornography in violation of Title 18, United States Code, Section 2251(a). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    That on or about the dates specified in Counts One and Three of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

    a.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

    b.    For the purpose of producing a visual depiction of such conduct; and

    c.    The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign

1

commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## Penalties

3. a. The maximum sentence provided by statute *for each* count of production of child pornography is as follows: not less than fifteen (15) years and not more than thirty (30) years imprisonment, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, and must pay a $5,000 special assessment pursuant to 18 U.S.C. § 3014, both of which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

b. The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in a plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses

2

to attend.

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

        a.      A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those in Count One and

3

Count 3. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

Count One (John Doe):

    b.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    c.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

Count Three (Jane Doe 1):

    d.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    e.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

    f.    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 38).

    g.    Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 40).

Guidelines for Relevant Conduct: Production of Child Pornography Jane Doe 2:

    h.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    i.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

    j.    Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 38).

Guidelines for Relevant Conduct: Production of Child Pornography Jane Doe 3:

    k.    The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

    l.    Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36).

    m.    Pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 38).

      n.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 40).

Guidelines for Relevant Conduct: Possession of Child Pornography:

      o.      Pursuant to U.S.S.G. § 2G2.2(a)(2), the base offense level for receipt of child pornography is a level 18.

      p.      Pursuant to U.S.S.G. § 2G2.2(b)(2), 2 levels are added because the material involved prepubescent minors. (Subtotal: 20).

      q.      Pursuant to U.S.S.G. § 2G2.2(b)(5), 5 levels are added because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. (Subtotal: 25).

      r.      Pursuant to U.S.S.G. § 2G2.2(b)(6), 2 levels are added because the Defendant used a computer or an interactive computer service for the possession of the material. (Subtotal: 27).

      s.      Pursuant to U.S.S.G. § 2G2.2(b)(7)(C), 5 levels are added because the offense involved more than 600 images. (Subtotal: 32).

Grouping:

7.      Pursuant to U.S.S.G. §§ 3D1.4, because there are 4 ½ units, the highest offense level (40) is increased by four (4) levels. (Subtotal: 44).

8.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Thus, the final anticipated offense level is 41.

Chapter Four Enhancement:

9.      Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal 46).

10.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a

5

career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4, or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

12. The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: a sentence of no more than forty (40) years of incarceration, and no less than 25 years' supervised release. For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement. This agreement does not affect the Court's discretion to impose any lawful term of supervised release over 25 years or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

13. The parties can argue for any lawful term of supervised release, fine, and restitution.

### Obligations of the United States Attorney's Office

14. This Office will recommend that the Court impose a sentence of no more than forty (40) years of incarceration. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

15. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Restitution

16. For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this

Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Collection of Financial Obligations

17. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

18. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

19. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Forfeiture

20. Your client agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residences on May 25, 2016 and September 7, 2016. He further agrees to take whatever steps are necessary to pass clear title to the property to the United States or any State authority. Those items include, but are not limited to:

   a. ACER Aspire laptop, Model # PEW71, S/N: S/N LXRJW021252071AC493400, made in China;

   b. SanDisk adaptor, containing a PNY 32GB MICRO SD HC, S/N UD32G10R40ATC40B, made Korea;

   c. Polaroid Camera, Model i1237, pink and black in color, made in China;

   d. Toshiba portable hard drive, S/N X2J5S0M5SSX3, made in China;

   e. Samsung mobile phone, Model SM-G360V, IMEI 990005911312818, made in China;

   f. SanDisk Ultra Plus 32 GB SD HC Card, S/N BM1414950104G, made in China; and

   g. 007 The Devil CCTV HD video camera.

## Waiver of Appeal

21. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

    e. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement.

## Obstruction or Other Violations of Law

22. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

23. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant further understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

24. The Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and under this plea agreement, the Court can impose a sentence up to 40 years of incarceration. The Defendant understands that if the Court ascertains factors different from those contained in the stipulations set forth above, or if the Court should impose any sentence up 40 years of incarceration, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement.

## Entire Agreement

25. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/3/17
Date

Eric Nathaniel Sammons

I am Eric Nathaniel Sammons's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/3/17
Date

Andrew Szekely, Esq.

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Eric Nathaniel Sammons ("Sammons"), age 25, is a resident of Trappe, Maryland. As detailed below, between 2014 and 2016, Sammons sexually exploited four minors and produced images of the minors engaged in sexually explicit conduct. Additionally, Sammons maintained a collection of child pornography on his digital devices.

Count One (John Doe):

On an unknown date but prior to May 25, 2016, Sammons and John Doe, who was born in 2003, were alone in a residence, and John Doe was in the custody, care, or supervisory control of Sammons. Sammons set up a hidden camera in the bathroom, intending to capture video depicting the lascivious display of John Doe's genitals. Sammons then sent John Doe into the bathroom and recorded a series of 21 videos of John Doe urinating, focused on John Doe's penis. Later that evening, Sammons placed the surreptitious camera on a shelf in the bathroom, aimed at the bathtub. Sammons then handed John Doe a pornographic magazine and encouraged him to enter the bathroom to masturbate. Sammons produced a series of 26 videos that captured John Doe masturbating in the bathtub. When Sammons handed John Doe the magazine, he gave him instructions about what to say if he was caught with the magazine.

Count Three (Jane Doe 1):

On approximately October 6, 2015, Jane Doe 1, age 3, spent the night at Sammons' apartment in Talbot County, Maryland. Over the course of an hour near midnight, Sammons took a series of 32 photographs including images that depict Jane Doe 1 partially naked and in various poses, focused on Jane Doe 1's genitals; images which depict Sammons' hand manipulating Jane Doe 1's genitals; and images which depict Jane Doe 1 touching her genitals with her hand.

Relevant Conduct (Jane Doe 2 & Jane Doe 3, Counts 5 & 6):

From approximately May 26, 2016 through September 2016, Sammons was living in the detached garage of a friend in Caroline County. While he was a guest in the friend's garage, Sammons snuck into the home and entered the daughters' bedroom while they slept and produced images of Jane Doe 2 and Jane Doe 3 (touching) engaged in sexually explicit conduct

1

while they slept. While Jane Doe 2, age 3, slept, Sammons pulled her underwear to the side and produced three images, including an image which focused on Jane Doe 2's exposed genitals. While Jane Doe 3, age 5, slept, Sammons pulled her underwear to the side and produced eight images, some of which focused on Jane Doe 2's exposed genitals, and depicting Sammons hand touching Jane Doe 3's genitals.

Relevant Conduct (Possession of Child Pornography):

On May 25, 2016 and September 7, 2016, Sammons' residences were searched by law enforcement investigators. During the execution of the search warrant, agents seized Sammons' computer equipment and digital cameras, further described as:

a. ACER Aspire laptop, Model # PEW71, S/N: S/N LXRJW021252071AC493400, made in China;

b. SanDisk adaptor, containing a PNY 32GB MICRO SD HC, S/N UD32G10R40ATC40B, made Korea;

c. Polaroid Camera, Model i1237, pink and black in color, made in China;

d. Toshiba portable hard drive, S/N X2J5S0M5SSX3, made in China;

e. Samsung mobile phone, Model SM-G360V, IMEI 990005911312818, made in China;

f. SanDisk Ultra Plus 32 GB SD HC Card, S/N BM1414950104G, made in China; and

g. 007 The Devil CCTV HD video camera.

h. Samsung mobile phone, Model SM-S765C, Black, MEID 26843546321023103, made in China; and

i. Toshiba Portable Drive, Red, S/N X2J5S0LYSSX3, made in China.

The defendant's digital devices were forensically examined. Investigators found images and videos of child pornography on the devices, and determined that the Samsung mobile phone, the Polaroid digital camera and the video camera were used to produce the child pornography described above. The devices contained the images described in the stipulated facts, as well as an additional 6 videos and over 3000 images of child pornography.

2

The digital devices were all manufactured out of the state of Maryland. The visual child pornography found in Sammons' possession was transported in or affecting interstate or foreign commerce, and were produced using materials that had been transported in or affecting interstate or foreign commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

_____
Eric Nathaniel Sammons

I am Mr. Sammons' attorney. I have carefully reviewed the statement of facts with him.

_____
Andrew Szekely, Esq.
Counsel for Eric Nathaniel Sammons